This was a bill filed by the complainants to procure an injunction to a suit at law brought against them on a bond, which they had conditioned to pay — 1000Í. This bond had been given on the purchase of a brig, from the defendant Dickenson, in July, 1783. The complainants charge, that the seller declared the brig was sound and good, British built, and British bottom: That complainants purchased on these assurances: But the! the complainants afterwards, in a few months, discovered that the vessel was American built, worn out, and unsound: And they procured a survey of shipwrights, masters of vessels, ¿*' who declared the brig unfit for sea, and that she had been lor eighteen months.
*134 SEPTEMBER. 1785.
An injunction ivas granted in tlie first instance — -On tlie answer coining in, the defendant admitted tlie sale, and that the bond was taken for the purchase money: But he denied that at the sale, or previous to it, he had assured the purchasers the brig was British built, and was sound and good, or that purchasers had bought on that ground; or upon representations of that kind from defendant: That the brig did not belong to defendant, but to his employers, who sent her to Charleston for a cargo; but being disappointed, consulted with the commercial correspondents of the owners, who advised a sale of the brig: That defendant told Neilson, one of the complainants, that he believed the vessel was British built, and a good one, as she had been lately bought as such by the owners — but she had been a prize, and he could not speak positively. He told him he could not warrant her, and desired him to have her examined if he wished to purchase. Defendant believes the vessel to be British built; and he thinks she was not unsound, or unfit for sea, when he sold her — hut understands she suffered material injury in the storm of October, 1783, before she was examined.
On the trial of the case, three witnesses swore that Dickenson did say the vessel was British built — one witness thought she was British built, but six were of a different opinion. It was, however, only an opinion, and they had no knowledge of the vessel originally. The court, therefore, laid that fact out of the case. One witness alone deposed that defendant had assured Neilson that the vessel was sound and seaworthy; so that his testimony was directly opposed to the answer on this point: But the court said the evidence of a single witness, without strong circumstances, could not overthrow the answer.
The court in delivering its opinion said, “ that the principal question is, whether the seller is so far liable for the defect of the thing sold, as to vitiate the contract in case of defect. The plaintiff’s counsel contend, that although no warranty had been given, if any defect should be found-in the thing sold, whether it be with or without the knowledge of the seller at the time of the sale, it vacates the contract. There has been no-attempt to shew *135 that defendant knew the vessel was unsound. The whole matter is reduced to this single point, whether the seller is answerable for defects be did not know, and where there is no warranty. I think not: For if this doctrine was to be established by this court, it would create endless confusion in the sale of property; for if one man sells, and makes. no assurance of the good or ill qualities of the thing sold, and the buyer should afterwards discover defects, or probably not find those qualities which he might have supposed were in the thing bought; or if he finds he has made a had bargain, it is easy enough to discover some defect or other, and if therefore the bargain is to he vitiated, there will he no end to suits; and no man can tell when he has really disposed of his goods, and the terrors of a law-suit will be constantly hanging over Ms head. This would give such a stab to a free trade, as must be productive of fatal effects. If a man wants to buy, and the seller will not warrant, it is certainiy bis business to inform himself of the qualities of the thing he wants to buy; hut if he does not, and he should afterwards find he has made a bad bargain, it is bis own laches, and he must abide the consequence. — I am, therefore, for dissolving the injunction.’’
B. 33. p, J94,
It was ordered and decreed that ihe bill be dismissed with costs.